KEE KAN, NG LAI, NG YEE, KONG YEE, KONG
LUNG, LOY HOCK LOCK AND CHEN WAI, PART-
NERS UNDER THE NAME OF KWONG LEE
YUEN & CO., *v.* THE ALLIANCE ASSURANCE
COMPANY OF LONDON.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

ARGUED APRIL 4, 1905.                    DECIDED APRIL 18, 1905.

FREAR, C.J., HARTWELL, J., AND CIRCUIT JUDGE LINDSAY IN
PLACE OF WILDER, J.

The board of health ordered destroyed by fire as infected by
plague all the buildings in a particular portion of a certain block.
The fire department, which was requested to execute the order,
first burned three buildings in the middle of the block outside of
but near the condemned area. This fire spread accidentally
not only to the condemned buildings but to others in the same
block and from building to building and block to block until it
reached the building covered by the policy of insurance upon which
this action was brought. The policy excepted losses caused "by
order of any civil authority." There was evidence tending to
show that the three outside buildings were burned for the purpose
of making room for the firemen to work in or to prevent the
spread of the fire when the condemned buildings should be burned,
or by mistake under the impression that these buildings were
covered by the order of the board of health; also that the spread
of the fire was due to a wind, claimed to be extraordinary, which
arose after the fire was started. Held,

FIRE INSURANCE—*loss caused by order of civil authority.*

The fire should be regarded as caused by the order of the board
of health, though started in buildings outside of but near the con-
demned area, if it was so started for the purpose of preventing a
spread of the fire from such area to other uncondemned buildings
and was reasonably necessary or reasonably supposed to be nec-

essary for that purpose, but not if, though done in good faith, it was so started by mistake or merely to make room for convenience to work in when burning the condemned buildings. A new trial is ordered for erroneous instructions upon these points.

INSTRUCTIONS—*inapplicable.*

It is not error to refuse instructions that are inapplicable to the evidence, as, for instance, instructions based on the theory that the fire might have been started in the buildings outside the condemned area on the belief that those buildings would soon be condemned, there being no evidence tending to show that the fire was started on that belief.

EVIDENCE—*minutes of board of health.*

A statement of certain proceedings of the board of health is admissible as minutes of a meeting of the board to show the resolution of the board condemning the buildings and ordering their destruction by fire, although such statement is not headed "minutes of a meeting of the board" as other minutes in the same volume are, and although the volume contains some other matter than minutes of meetings of the board, it appearing otherwise that such statement was the minutes of a meeting of the board.

Such minutes are admissible also in the present case although the meeting was a special one called for a purpose other than that in question—whether they would be admissible or not in a proceeding between the board and one affected by its action. There was also evidence tending to show that all the members of the board were present at the meeting, in which case no question as to notice to absent members could arise.

BURDEN OF PROOF—*distinguished from burden of producing further evidence.*

The burden of proof rests upon the party who is required to ultimately establish his case by a preponderance of evidence in a civil case and does not shift. The burden or duty of going forward with the evidence may shift according as presumptions that have to be met by the opposite party are raised by the evidence of either party, but all that is necessary to sustain such burden or duty is to introduce sufficient evidence to balance the evidence which it is intended to meet and so bring the evidence on both sides into equilibrium.

OPINION OF THE COURT BY FREAR, C.J.

This is an action for $750 upon a policy of fire insurance issued by the defendant upon the plaintiffs' building situated

on the northerly side of King street between Maunakea and Kekaulike streets in Honolulu. It is one of the so-called China-town fire cases, a number of which have come before this court during the last five years. The one most similar to this—so similar that most of the statements both of law and of fact in that are applicable to this case—is that of the present plaintiffs against *The Manchester Fire Assurance Co.,* 15 Haw. 704.

On January 19, 1900, the board of health condemned and ordered to be destroyed by fire as infected by bubonic plague all the buildings on the Waikiki side of a line drawn along that (the Waikiki) side of the Kaumakapili Church premises and extended through the block, in what is known as Block 15, bounded by Nuuanu, Beretania, River and Kukui streets. The fire commissioner to whom the order was addressed passed it on to the chief engineer of the fire department, who proceeded to carry it out on the following day. Before burning the build-ings covered by the order, however, he burned three buildings in the same block outside of the condemned area on the Ewa side of the line above mentioned and immediately in the rear of the Kaumakapili Church premises. From these buildings the fire spread accidentally not only to the condemned build-ings but to Kaumakapili Church and the buildings on the other side in the same block and then from building to building and block to block until it reached the building covered by the policy in question.

The plaintiffs proved the policy and the loss or destruction of the building by fire. The defendant then, with a view to showing that the loss was one excepted by the terms of the pol-icy, namely, a loss caused "by order of any civil authority," introduced evidence tending to prove the order of the board of health and that the fire was started in pursuance or as a result of that order. The plaintiffs in rebuttal then attempted to show that the loss was not caused by the order of the board by showing (1) that the fire was started outside of the condemned limits and in a building or buildings not covered by the order of the board and not reasonably required to be burned in order to

execute the order of the board or prevent the spread of fire from the condemned buildings to other buildings and (2) that after the fire was started it spread to the building covered by the policy through the intervention of an independent self-operating efficient cause, namely, an extraordinary wind that arose after the fire was started. It is in connection with the first of these attempted showings of the plaintiffs that the principal questions in the case arise, and for erroneous rulings by the trial judge in regard to which a new trial must be ordered.

In the case above cited the plaintiffs took the position that the mere fact that the fire was started outside of the condemned area was sufficient to show that it was not caused by the order of the board of health, but the court took a different view and held that, under certain circumstances at least, the fire might have been caused by order of the board even though it was started outside of the limits of the condemned area, as, for instance, if the burning of the three buildings outside of that area was reasonably necessary or reasonably supposed by the chief engineer to be necessary to prevent the spread of the fire to other buildings that had not been condemned. The plaintiffs now, conceding the correctness of that conclusion, contend that the court did not in that case go any further, and should not now go any further, than to hold that the burning of the outside buildings should be considered as caused by the order of the board only in case the burning was reasonably necessary or reasonably supposed to be necessary to prevent the spread of the fire to other buildings not ordered to be burned. The defendant, on the other hand, contends that the former decision went so far, and that the court should now go so far, as to hold that the burning of the outside buildings was caused by the order of the board if the chief engineer acted in good faith in burning them, whatever actuated him, as, for instance, even if, as the plaintiffs contend, he burned them under the erroneous impression that they were within the condemned area or that the order of the board included the entire block in which these buildings were situated or if he burned them merely for the purpose of

making room for convenience in burning the condemned buildings. In our opinion the plaintiffs' contention in this respect must be sustained.

The court did not attempt in the former case to state exhaustively the circumstances under which the burning of the outside buildings might or might not be considered as caused by the order of the board. For instance, it stated that, if the chief engineer set fire to these buildings not in execution of the order received but to gratify ill will, the order would not be regarded as the cause of the fire, but it did not hold conversely that anything whatever short of that would make the order the cause of the fire. It held that at least one thing short of that, namely, reasonable necessity, would produce that result. Again, it expressly declined to state what the result would be if these buildings were burned by mistake on the supposition that they were within the designated area. It did not even state that the order of the board would be regarded as the cause of the fire if the burning of these buildings was reasonably necessary to execute the order aside from the question whether that was reasonably necessary to prevent the spread of the fire to other buildings. The reasonable necessity that was held sufficient to bring the fire under the order of the board was stated with reference to either the spread of fire alone or the execution of the order and the spread of the fire at the same time conjunctively. Theoretically it might be sufficient if the burning of these buildings was reasonably necessary for the execution of the order irrespective of preventing a spread of the fire, although it is difficult to conceive how there could have been such a necessity in the present case.

If the buildings outside the condemned area were burned by mistake on the supposition that they were within the portion of the block that had been condemned or that the entire block had been condemned and ordered burned, the fire could not be regarded as caused by the order. The order in such case would be merely an occasion, not the cause of the fire. It would not be a *causa causans* that rendered that fire necessary, nor would that

fire be *ex justa causa* with reference to the order of the board. There was no order to burn those buildings. The chief engineer in burning them was not acting under the direct supervision of the board. He was in a sense in the position of an independent contractor, in which case the doctrine of *respondeat superior* would not apply as to acts wrongfully done by him not within the scope of his orders in an action against his superior if his superior were suable in tort, although, as stated in the former case, the law of torts is not altogether applicable in an action of contract against a third party, an insurance company. It is not sufficient that the fire would not have been started but for the order of the board. It must have been within the scope of the order or rendered reasonably necessary by the order. Likewise, if the burning of these buildings was merely for the purpose of making room as a matter of convenience for burning the condemned buildings, the burning could not be regarded as caused by the order of the board, there being no reasonable necessity for that. It may be that the burning of these buildings for the purpose of making room might be brought under the order of the board if it was done for the purpose of controlling the burning of the condemned buildings so as to prevent the spread of fire, if that was reasonably necessary, as distinguished from the prevention of a spread of fire from the condemned buildings to other buildings through these buildings as a medium, but not, as already stated, if it was done merely for the purpose of making room as a matter of convenience in order to burn the condemned buildings, there being no reasonable necessity for that. It makes a difference whether the burning of these buildings was a means to an end or the end itself, and, if a means, what the end was for which it was a means.

The principal exceptions involving these questions are those numbered 6, 8 and 9. Exception 6 was taken to the giving of defendant's requested instruction 18, which was as follows:

"If you believe from the evidence that the chief engineer of the fire department started the fire in a building outside of the boundary line laid down in the order of the board of health in good faith with a view to prevent the spread of fire, or for the

purpose of making room for the firemen to work in, in executing the order, I charge you that the order of the board of health should still be regarded as the proximate cause of plaintiffs' loss and your verdict should be for the defendant, unless you find from the evidence that the spread of fire was caused by an unusual and extraordinary wind."

The objection to this is that it makes good faith alone sufficient, even though the burning of these buildings was merely with a view to prevent the spread of the fire, whether it was reasonably necessary or reasonably supposed to be necessary for that purpose or not, and, worse still, even though it was merely for the purpose of making room for the firemen to work in in executing the order irrespective of the purpose of preventing the spread of the fire by enabling the firemen to control it and irrespective of whether the making of room for any purpose was reasonably necessary or reasonably supposed to be necessary or not.

Exceptions 8 and 9 relate to the question of mistake—exception 8 being to an instruction to the jury that there was no evidence of a mistake and that the jury should disregard the argument of plaintiffs' counsel upon that point; exception 9 being to the refusal to give the plaintiffs' requested instruction to the effect that if the chief started the fire in the ouside buildings by mistake the fire was not caused by the order of the board. In view of what has already been said it will be unnecessary here to do more than point out that there was evidence to go to the jury on the question of mistake. It was undisputed that the buildings were in fact outside of the condemned area; one witness, the engineer and foreman of one of the fire engines, testified that they went out that morning to burn Black 15, that that was the order he got from the chief, that the chief came down the afternoon before and told him that they were going to burn Block 15 and would first burn the Waikiki half of it and that they had orders to burn Block 15 and that they had decided to start right back of Kaumakapili Church and burn out those buildings first, and that the common way of working at previous similar fires had been to go into the center of a con-

demned area and burn out a few buildings there to get room to work in and then work from that in different directions; another witness, then the senior foreman, now the chief, testified that on that afternoon the chief and he rode entirely around the block looking at it and that the chief had said that the next day they were going to burn down half of it and that he intended to burn this portion first and start at the L shaped building (one of the three outside buildings) and burn right over to Nuuanu street. This it seems to us was sufficient to go to the jury on the question of mistake. It is not for us to say how much weight should be attached to it, but in this connection it may be said that the chief engineer at that time, the one man who could state definitely the object of burning the outside buildings, had died before the trial and that it was difficult to get conclusive or strong evidence to support any theory. The evidence in support of the theories of the defendant itself is not altogether convincing, to say the least; indeed, the plaintiffs go so far as to contend that the verdict should be set aside on the ground that there was no substantial evidence to support the defendant's theories.

While not strictly necessary for present purposes, since a new trial must be ordered upon the exceptions already considered, we will nevertheless pass briefly upon the questions presented by several other exceptions, with a view to preventing them from arising again on the new trial.

Exceptions 10 and 11 were taken to the refusal of the court to give plaintiffs' requested instructions 5 and 6, to the effect that if the chief of the fire department started the fire in the buildings outside of the condemned area, knowing that such buildings were not covered by the order of the board of health, or not knowing whether they were so covered or not but disregarding or neglecting to examine carefully or follow the terms of the order, and acting on his general belief that such buildings would be condemned and ordered to be burned in the near future, if not already condemned, then the fire was not caused by the order of the board. We find no error in refusing these

instructions. There was no evidence to which they were applicable unless on the view that it was a matter of pure guesswork for the jury to say why the fire was started outside the condemned area and that the jury might as well have guessed that it was because the chief thought these buildings would be condemned as made any other guess. There were several other theories, each of which was far more reasonable and supported by more or less definite evidence.

Exceptions 1 to 5 inclusive relate to the admissibility of what were introduced as minutes of the board of health for the purpose of proving the resolution of the board condemning the buildings within the area above described and ordering their destruction by fire. It was held in *Ahana v. Ins. Co. of North America,* 15 Haw. 638, that these minutes were admissible in evidence and there is no occasion to go over that ground again. It is contended, however, that certain objections are made now to the admissibility of these minutes that were not made in that case. For instance, it is contended that the book containing the minutes of the board contained some other matters also, as, for instance, a note at the bottom of page 189, which the trial court excluded as not being a part of the minutes. It is contended that the so-called minutes of the meeting at which the resolution in question was adopted and which are set forth on pages 145 to 159 inclusive are of the same character and more particularly because these minutes are not headed substantially in the form "Minutes of a meeting of the board of health," as is the case with other minutes in the volume, and because in the minutes of a subsequent meeting found on page 377, which contain an approval of the condemnation proceedings in question and of minutes of other meetings covering a period of several months, the board itself distinguished between minutes of such other meetings and the condemnation proceedings, thus indicating, as it is contended, that the board itself did not consider the statement of the condemnation proceedings as minutes of a meeting of the board. In our opinion the statement of the condemnation proceedings were minutes

of a meeting of the board and were so considered by the board itself. No particular form is prescribed for minutes of meetings of the board: The statement in question purports on its face to be minutes of a meeting of the board. It opens with a statement that the board "met" at a certain time and place pursuant to a resolution passed at "yesterday's meeting." The proceedings are then set forth in a formal way showing motions made, seconded and acted upon. The statement then closes with "The meeting then adjourned" to meet at a certain time and place. The approval by the board of these proceedings at the subsequent meeting was an approval not merely of the "condemnation proceedings" but of the "minutes of the condemnation proceedings."

It is further objected to these minutes that the meeting in question was a special meeting held in pursuance of a resolution passed the day before to visit Block 10 and that it does not appear that any notice was given to absent members of the board, who might have been interested in Block 15, now in question, and other blocks that were acted upon at that meeting. This objection was practically passed upon in the *Ahana* case above cited, for there one of the objections was, not indeed that no notice was given to absent members as to other blocks than Block 10, but that no notice of this special meeting was given to such members at all. It was held that whatever might be the conclusion in a proceeding as between the board and one affected by its action the minutes were admissible in an action like the present. It may be added that there was evidence tending to show that this was a full meeting of the board, in which case, all the members being present, no special notice was required.

Exception 7 was taken to the giving of defendant's requested instruction 20, as follows:

"The burden of proving with a preponderance of evidence that an unusual and extraordinary wind intervened and caused the spread of fire is upon the plaintiffs. Unless this burden has been sustained by the plaintiffs, you will find the fact against their contention."

This instruction was perhaps technically erroneous as a proposition of law, assuming that there was evidence to which it was applicable, though it is doubtful whether·it could have been prejudicial to the defendant. It involves the distinction between the burden of proof or the burden of the issue in the sense of ultimately establishing the case of the party upon whom such burden rests and the burden or duty of going forward with the evidence. The burden of proof does not shift but the burden of producing further evidence may shift. The burden of proof rests upon the real "actor, who has to bring his proof to the required height and carry his case beyond an equilibrium of proof, or beyond all reasonable doubt, as the case may be," and who may be the plaintiff or the defendant according to the circumstances. In the present case, assuming that the defendant adduced sufficient evidence to raise a presumption that the fire was caused by the order of the board of health, the burden or duty was then cast on the plaintiffs to introduce evidence to rebut that presumption, but all that was necessary was to introduce sufficient evidence to meet or balance the defendant's evidence and produce an equilibrium. It was unnecessary to produce a preponderance of evidence upon that point in order to be entitled to judgment, for, if the defendant's evidence were merely met on that point, the plaintiffs would still be entitled to judgment upon their proof of the policy and the destruction of the building by fire. These two expressions, the "burden of proof" and the "burden of going forward with the evidence" and other expressions deemed synonymous, are often used with inexactness, the former expression particularly being used indiscriminately to denote both ideas, and perhaps generally little or no harm results practically from such looseness of expression. However, it is well to avoid it. Perhaps the only safe course is to use in each instance other language that is free from ambiguity. See 1 Elliott on Evidence, Ch. 7.

Exception 12 is abandoned. Exceptions 13 and 14, taken to the verdict as contrary to the law and the evidence and to the overruling of a motion for a new trial based on that ground,

need not be considered in view of the conclusion reached on exceptions 6, 8 and 9.

The verdict is set aside, a new trial ordered and the case remanded to the circuit court.

*Ballou & Marx* for the plaintiff.

*A. G. M. Robertson* for the defendant.