## American Central Insurance Company v. Stearns Lumber Company.

### (Decided November 3, 1911.)

### Appeal from the Whitley Circuit Court.

1. United States Marshal—Authority to Make Arrest—Power to Burn House in Which Person sought is Concealed.—The United States Marshal has the same power in making an arrest as the sheriff under the State statute, neither has power to burn a house in which the person sought to be arrested is concealed, and he and his friends resist with arms the entry of the officer or his posse into the house.

2. Insurance Against Fire—Burning House by Officer in Making Arrest.—Release of Insurance Company.—The house having been burned under such circumstances by order of the marshal the burning was unlawfully, but it was not the result of the riot, and the Insurance Company is not released from liability under a clause of the policy exempting it from liability when the loss was caused directly or indirectly by riot or by order of any civil authority.

FLEXNER, CAMPBELL & GORDON for appellant.

J. N. SHARP for appellee.

Opinion of the Court by Chief Justice Hobson—Affirming.

Early in December, 1908, a strike existed among the employees of the Stearns Coal Company, and it filed a petition in the United States Circuit Court and obtained an injunction against the striking miners. It was alleged in the petition that the strikers had conspired to destroy the plaintiff's business and property and were threatening violence to the property of the Company and its servants who were at work. The court granted an injunction as asked. The injunction was disobeyed by one Berry Simpson, and a warrant of arrest was issued against him for contempt of court. The deputy marshal to whom the warrant was delivered for execution, made a return on December 14, 1908, in effect that Simpson had a gang of armed men with him who prevented his arrest under the process, the names of the men being set out in the return. On December 22 warrants were issued for the arrests of these men as well as Berry Simpson. On the night of December 24, a deputy marshal returned to Stearns for the purpose of executing the warrants. He took with him a number of persons to assist him, and after his arrival there, summoned others. Another deputy marshal was also with him; they and the members of their posse were all armed with guns and pistols. On the morning of December 25 they learned that three of the men they wished to arrest were in the hotel building at Stearns. The marshals and their posse surrounded the hotel: one of the deputy marshals went upon the porch, and was in the act of opening the front door when he was shot and killed by one of the three men on the inside of the hotel. Shots were then fired both from the inside of the hotel by the three men who were resisting arrest and by the posse on the outside into the hotel. Two of the posse were wounded. This shooting continued for some minutes. There was then a cessation during which time the women and children came out of the hotel, the deputy marshal announcing that he would burn the house. The marshal got some dynamite and attempted to blow it up, but he could not use it as it was frozen. The shooting from the inside and the outside of the building was resumed and continued for an hour or two. The deputy marshal then made a fagot, soaked it in oil, which he turned over to a member of his posse, who under his command applied

his torch to the building and it was burned down. While the building was burning the three men on the inside rushed out, one was arrested, another was killed and the third escaped. During all the time the three men were inside of the hotel, and while the shooting was going on, there was much excitement throughout the town. Business was practically suspended; several hundred shots were fired, and many persons on account of the excitement took refuge behind buildings or in their own homes, The hotel was insured in the American Central Insurance Company, and this suit was brought against the Insurance Company by the owner to recover for the loss of the property. The policy among other things provided:

"This company shall not be liable for loss caused directly or indirectly by invasion, civil war or commotion, or riot or military or usurped power or by order of any civil authority."

The defendant pleaded this clause and the facts above stated in bar of a recovery on the policy. On an agreed statement of facts the court entered judgment for the plaintiff. The Insurance Company appeals.

It is insisted for the appellant that the case falls within the rule laid down by us in Spring Garden Insurance Co. v. Imperial Tobacco Co., 132 Ky., 7. In that case we approved the following definition of a riot:

"A riot is a tumultuous disturbance of the peace by three persons or more assembling together of their own authority with an intent actually to assist each other against any who shall oppose them in the execution of some enterprise of a private nature, and afterwards actually executing same in a violent and turbulent manner to the terror of the people."

In that case the property was burned by the rioters and the loss was caused directly by riot. Here the rioters were the lawless men who resisted arrest and were secreted in the hotel. They had killed one of the deputy marshals and wounded two of the posse, but they did not burn the house. The house was burned by the order of the marshal. The power of the marshal in such cases is thus defined by statute:

"The marshals and their deputies shall have in each State the same powers in executing the laws of the United States as sheriffs and their deputies in such State may have by law in executing the laws thereof." (U. S. Compiled Statutes, 1901, Sec. 788.)

The power of the sheriff in executing a criminal process is covered by section 4583 of the Kentucky Statutes and section 40 of the Criminal Code.

"In executing a writ of habeas corpus or any criminal or penal process requiring an actual arrest, the sheriff or other officer may break open the outer or any other door of the dwellings or other house of the defendant, or of any other person, if it be necessary to enable him to make the arrest." (Ky. St. 4583.)

"To make an arrest, an officer may break open the door of a house in which the defendant may be, after having demanded admittance and explained the purpose for which admittance is desired." (Criminal Code, Sec. 40.)

It will thus be seen that the marshal's power is the same as the sheriff's, and that neither is authorized to burn a building in making an arrest. In Goodman v. Condo, 12 Penn. Sup. Ct. 466, the court had before it the liability of a sheriff in a case like this for burning down a house in which a felon was secreted in order to arrest him. The court held the sheriff liable for the loss of the building. It said:

"The sheriff in this case does not rely upon any law which required this particular act, causing the damage to be done, and prescribing the manner in which it should be done. He stands, therefore, just as any other resident of the village in which these occurrences happened would stand so far as any right to destroy property is concerned. It is true that it was his official duty to arrest the felon, but so was it the duty, though not official, of the residents to do the same thing. To enable him to perform his duty he has been clothed with ample power, for the whole posse comitatus is at his command. He may break open doors in order to follow felons, and if they are killed, provided they cannot be otherwise taken, it is justifiable, though if they kill him whilst he is endeavoring to arrest them it is murder; Brook v. Com. 61 Pa. 352. The law, since it has thus invested him with such ample power, has not gone further and authorized him to destroy property when such destruction simply removes somewhat of the danger involved in the performance of his duty. The arrest of a felon is always attended with some danger, but this is an incident of the office of sheriff. Its extent is reduced to a minimum by the great power given to him, but it is obvious that it cannot be removed entirely. This burned house did not threaten the life of the sheriff. It was the desperate

man within it. It is true that the house furnished some measure of protection to the man within whilst accomplishing his lawless purpose, but its destruction can in no sense be said to have removed a danger which threatened the sheriff's life. So long as the lawless purpose existed, so long was there danger to the sheriff. It is evident, therefore, that the only purpose of destroying the house was to render the arrest less dangerous. In this respect it was simply an aid to and in ease of the sheriff and upon principle must be paid for by him. Where he incurs expense or inflicts damage for the purpose of aiding him in the performance of his duties he is liable personally unless the law has provided otherwise. (Raush v. Ward, 44 Pa. 389.)''

· The deputy marshal in the case before us had no more authority to set the house on fire than the sheriff in the case cited. The loss of the house was not due directly or indirectly to the order of any civil authority; for the marshal had no authority to burn the house. He was not a civil authority for this purpose. The rioters were in the house; the marshal's posse, acting under his orders, were not rioters. The loss of the house was not due directly or indirectly to the riot carried on by the men within the house. It was due directly to the wrongful act of the marshal in setting fire to the house without authority. The riot within the house was the occasion of his wrongful act but the loss of the house was not the proximate result of their lawful acts. The loss of the house was the direct result of another unlawful act which intervened between their act and the burning of the house. The unlawful act of the marshal in setting fire to the house was the cause of the loss. It necessarily follows that the Insurance Company was not released from liability by the clause of the policy above quoted.

Judgment affirmed.