123 So.2d 157

BANKERS FIRE AND MARINE INSURANCE COMPANY

v.

James BUKACEK.

7 Div. 371.

Supreme Court of Alabama.

Sept. 8, 1960.

R. Foster Etheredge and Spain, Gillon & Young, Birmingham, for appellant.

184

John H. Martin, Pell City, for appellee.

COLEMAN, Justice.

Defendant appeals from judgment for plaintiff entered on a jury verdict in action at law on policy of fire insurance. The policy insures plaintiff " * * * against all Direct Loss By Fire * * * Except As Hereinafter Provided, to the property described hereinafter * * *," and further provides:

"This Company shall not be liable for loss by fire * * * caused, directly or indirectly, by: * * * (h) order of any civil authority except acts of destruction at the time of and for the purpose of preventing the spread of fire, provided that such fire did not originate from any of the perils excluded by this policy * * *."

The property insured was a wooden, four room, one-story frame house, one room being made of logs, located two miles west of Pell City. Earl C. Snarr who was employed by the United States, the sheriff of St. Clair County, and others discovered a still in the house. It is not shown that plaintiff had any knowledge of or connection with the still. He testified that prior to the fire he had leased the property to one C. M. Hanna. Snarr was "in charge of that raid." Forty sticks of dynamite were placed in the still and exploded. The explosion destroyed the still and blew off part of the top and sides of the house, but "very little of it" was destroyed by the explosion. Fire followed the explosion and the house burned. Both parties appear to concede that explosion of the dynamite caused the fire.

The still was a whiskey still with "boiler type cooker" and ten or eleven "vats" which were "around ten feet long and about four or five feet wide, and four feet high." Capacity was "close to two thousand gallons a week."

By agreement of both parties, the following was admitted in evidence:

"Showing

" 'Earl C. Snarr if present in Court would testify as follows:

"Earl C. Snarr was on the date of February 8, 1956, a United States revenue officer employed by the Internal Revenue Service of the United States Treasury Department; that on or before said date, he, with assistants discovered an illegal and illicit still within the dwelling house of the insured described in the policy sued on; that on said date in the course of his duty he seized the still and he placed dynamite at and about the still in the dwelling house to destroy same so as to prevent the use thereof and to render it useless; the dynamite was set off and an explosion occurred blowing up the still and causing damage to the dwelling house by explosion and ensuing fire.' "

The defense relied on in this court is that the fire was caused by order of civil authority, and, therefore, under policy provision (h) quoted above, defendant is not liable. The assignments of error argued are that the court erred: (1) in refusing the affirmative charge with hypothesis requested in writing by defendant, (2) in overruling defendant's motion for new trial on the ground that the verdict is not sustained by the great preponderance of the evidence,

and (3) in giving certain portions of the oral charge.

Defendant argues that the proximate cause of the loss was the act of Snarr in destroying the still and that his act was authorized by the following federal statute:

"When a judgment of forfeiture, in any case of seizure, is recovered against any distillery used or fit for use in the production of distilled spirits, because no bond has been given, or against any distillery used or fit for use in the production of spirits, having a registered producing capacity of less than 150 gallons a day, for any violation of law, of whatever nature, every still, doubler, worm, worm tub, mash tub, and fermenting tub therein shall be so destroyed as to prevent the use of the same or of any part thereof for the purpose of distilling; and the materials shall be sold as in case of other forfeited property. *In case of seizure of a still*, doubler, worm, worm tub, mash tub, fermenting tub, or other distilling apparatus, *for any offense involving forfeiture of the same, where it shall be impracticable to remove the same to a place of safe storage from the place where seized, the seizing officer is authorized to destroy the same only so far as to prevent the use thereof, or any part thereof, for the purpose of distilling* (except in the case of a registered distillery). Such destruction shall be in the presence of at least one credible witness, and such witness shall unite with the said officer in a duly sworn report of said seizure and destruction, to be made to the Secretary or his delegate, in which report they shall set forth the grounds of the claim of forfeiture, the reasons for such seizure and destruction, their estimate of the fair cash value of the apparatus destroyed, and also of the materials remaining after such destruction, and a statement that, from facts within their own knowledge, they have no doubt whatever that said distilling apparatus was set up for use for distillation, redistillation or recovery of distilled spirits and not registered, or had been used in the unlawful distillation of spirits, and that it was impracticable to remove the same to a place of safe storage. Within 1 year after such destruction the owner of the apparatus so destroyed may make application to the Secretary or his delegate for reimbursement of the value of the same; and, unless it shall be made to appear to the satisfaction of the Secretary or his delegate that said apparatus had been used in the unlawful distillation of spirits, the Secretary or his delegate shall make an allowance to said owner, not exceeding the value of said apparatus, less the value of said materials as estimated in said report; and if the claimant shall thereupon satisfy the Secretary or his delegate that said unlawful use of the apparatus had been without his consent or knowledge, he shall still be entitled to such compensation, but not otherwise. In case of a wrongful seizure and destruction of property under this section, the owner thereof shall have right of action on the official bond of the officer who occasioned the destruction for all damages caused thereby. Aug. 16, 1954, 9:45 a. m., E.D.T., c. 736, 68A Stat. 687." Title 26 U.S.C.A. § 5623 (Emphasis supplied.)

The record does not disclose any judgment of forfeiture. The only order of any civil authority in this case was an order:

"* * * to destroy the (still) only so far as to prevent the use thereof, or any part thereof, for the purpose of distilling * * *."

In 1924, in ruling on a motion to suppress evidence of federal agents who had destroyed a quantity of intoxicating liquor, the Judge of a United States District Court wrote as follows concerning the progenitor of § 5623, Title 26 U.S.C.A., to wit:

"In the first place, it may be well to consider whether the agents have any

authority to destroy property seized on a valid search warrant. Under the statutes in force at the time of the enactment of the prohibition law, internal revenue officers had a very limited right to destroy property in case of seizure. This right was limited to the destruction of the still and certain other property, described in the statute, designed for the manufacture of liquor having a less producing capacity than 150 gallons per day and which was less than $500 in value, provided the offense involved forfeiture of the property and that it was impracticable to remove the same to a place of safe storage, and the officer was authorized to destroy the same only so far as to prevent the use thereof for the purpose of distilling. But in all such cases the statute required certain formalities respecting report and appraisal under oath (none of which were complied with by the federal agents in the instant case), and the owner was entitled to reimbursement for the value unless it was made to appear to the satisfaction of the officials that the apparatus had been used in unlawful distillation. R.S. § 3332 (Comp.St. § 6129). * * *." United States v. Cooper, D.C., 295 F. 709, 710.

The district court decided that "the act of the agent in destroying the liquor was entirely without any warrant of law and constituted a trespass," and that "the evidence sought to be suppressed was obtained by federal agents through an illegal search and seizure and is therefore inadmissible." The provision in the statute in 1924 limiting destruction on seizure where removal · is impracticable to stills producing less than 150 gallons per day and worth less than $500 has now been removed.

The statute gave no authority to Snarr to destroy the house. Assuming that it was impracticable to remove the distilling apparatus to a place of safe storage and that the agent was authorized to destroy it, can we hold as a matter of law in this case that he acted to destroy the still "only so far as to prevent the use thereof," when he exploded forty sticks of dynamite in the still? We are of opinion that we cannot so hold.

Appellant argues that "* * * The proof of the case is that *while in the course of his duty* he seized and destroyed the still so as to prevent the use thereof. This evidence is uncontradicted. There is a presumption that a public official properly and regularly discharges his duties * * * in accordance with the law and the authority conferred on him and that he will not do any act contrary to his official duty or omit anything which such duty may require. (Citations omitted) The presumption prevails until it is overcome by clear and convincing evidence to the contrary. 31 C.J.S. Evidence Section 146b. We speak of this presumption only because the appellee no doubt will be heard to say that Agent Snarr acted illegally. We do not think that even if there was proof that he acted illegally or negligently that such proof would remove the policy qualification from consideration. He was a duly constituted civil authority and he acted, and it was his order that caused the loss. But there is no proof, we reiterate, no clear and convincing evidence to overcome the presumption that he was discharging his duty or performing acts required by law."

The clause excepting from coverage a loss "caused, directly or indirectly, by order of any civil authority," has not, so far as we are advised, been heretofore considered in this jurisdiction, although it has been considered in a few cases elsewhere.

In Hawaii Land Co. v. Lion Fire Ins. Co., 13 Haw. 164, when bubonic plague struck Honolulu, the board of health ordered the burning of buildings in a designated area. The chief engineer of the fire department, being directed to execute the order, started the fire which "accidentally spread" to the insured building that was not one of the buildings ordered to be destroyed. The court upheld judgment for the insurer and said: the exception "may include loss caused by the order though not intended"; the

loss "resulted from * * * the order, indirectly, if not directly"; and while the exception would not exempt the insurer in every case where a civil authority set fire to a building while purporting to act in official capacity, it is sufficient where the civil authority has power to destroy buildings and does act within the apparent scope of its powers, and in such case the insured cannot raise inquiry as to whether the exercise of lawful power was justified by the circumstances of the particular case.

In Conner v. Manchester Assurance Co., 9 Cir., 130 F. 743, 70 L.R.A. 106, under an order of the county supervisors, a fire was started to destroy a plague of grasshoppers for the purpose of saving orchards and vineyards. The fire was set three or four miles from the insured grain field but "got beyond control and reached the lands" of the insured. On appeal, the court said that the statutes conferred authority on the supervisors to provide for destruction of injurious insects and "whether or not there was lawful authority to start the fire * * there was de facto authority. The order was in fact made * * * by the officers to whom the said powers were given, and thereby the loss occurred." Judgment for the insurer was affirmed.

In Hocking v. British America Assur. Co., 62 Wash. 73, 113 P. 259, 36 L.R.A.,N.S., 1155, where insured house was destroyed by fire which resulted from fumigation ordered by board of health, the court held that the proximate cause of the fire was the order of the board and not the negligence of its agents in executing the order. Judgment for the insurer was affirmed.

In Port Washington Nat. Bank & Trust Co. v. Hartford Fire Ins. Co., 253 App.Div. 760, 300 N.Y.S. 874, 875, federal agents used acetylene torches to destroy still pursuant to what is now § 5623, Title 26 U.S. C.A. The building housing the still "was inadvertently set on fire." The appellate court reversed judgment for plaintiff, dismissed the complaint, and said:

"* * *. It is to be presumed that the officers acted legally. Saunders v. Irwin, 17 Hun 342. The proximate cause of the fire was the execution by the United States revenue officials of the mandate of the law that illicit stills should be rendered useless. United States Code, title 26, § 1204. The 'proximate cause' is the efficient cause; the one that necessarily sets the other causes in motion. Aetna Insurance Co. v. Boon, 95 U.S. 117, 24 L.Ed. 395. Here the efficient cause, the one that set the other cause in motion, was the mandate requiring the officers to render the still unusable. * * *." 300 N.Y. S. 874, 875, 876.

In Kwong Lee Yuen & Co. v. Alliance Assurance Co., 16 Haw. 674, the suit arose out of the same fire as in Hawaii Land Co., supra, with the difference, however, that here it appears that the fire was started in buildings outside the condemned area and not ordered to be burned. Both opinions are by the same writer. In the later case, the court reversed judgment for insurer for error in giving to the jury a charge requested by defendant as follows:

"'If you believe from the evidence that the chief engineer of the fire department started the fire in a building outside of the boundary line laid down in the order of the board of health in good faith with a view to prevent the spread of fire, or for the purpose of making room for the firemen to work in, in executing the order, I charge you that the order of the board of health should still be regarded as the proximate cause of plaintiffs' loss and your verdict should be for the defendant, unless you find from the evidence that the spread of fire was caused by an unusual and extraordinary wind.'" 16 Haw. 674, 679, 680.

The court said:

"The court did not attempt in the former case (The Manchester Fire As-

surance Co., 15 Haw. 704) to state exhaustively the circumstances under which the burning of the outside buildings might or might not be considered as caused by the order of the board. For instance, it stated that, if the chief engineer set fire to these buildings not in execution of the order received but to gratify ill will, the order would not be regarded as the cause of the fire, but it did not hold conversely that anything whatever short of that would make the order the cause of the fire. It held that at least one thing short of that, namely, reasonable necessity, would produce that result. * * *" (Par. supplied) (16 Haw. 674, 678)

" * * * It is not sufficient that the fire would not have been started but for the order of the board. It must have been within the scope of the order or rendered reasonably necessary by the order. Likewise, if the burning of these buildings was merely for the purpose of making room as a matter of convenience for burning the condemned buildings, the burning could not be regarded as caused by the order of the board, there being no reasonable necessity for that. It may be that the burning of these buildings for the purpose of making room might be brought under the order of the board if it was done for the purpose of controlling the burning of the condemned buildings so as to prevent the spread of fire, if that was reasonably necessary, as distinguished from the prevention of a spread of fire from the condemned buildings to other buildings through these buildings as a medium, but not, as already stated, if it was done merely for the purpose of making room as a matter of convenience in order to burn the condemned buildings, there being no reasonable necessity for that. It makes a difference whether the burning of these buildings was a means to an end or the end itself, and, if a means, what the end was for which it was a means." (16 Haw. 674, 679)

"If the buildings outside the condemned area were burned by mistake on the supposition that they were within the portion of the block that had been condemned or that the entire block had been condemned and ordered burned, the fire could not be regarded as caused by the order. * *" (16 Haw. 674, 678).

In Reed v. Newark Fire Ins. Co., 74 N.J.L. 400, 65 A. 1053, 1055, a mortgagee sued on fire policy. Insurer pleaded that the loss was caused by order of a civil authority, to wit, an order of the building inspector of the city directing the destruction and tearing down of the building and not by fire. The court held the plea demurrable because it did not show "that the building inspector had authority to direct the destruction of these buildings, or in what manner such authority was conferred upon him."

In American Central Ins. Co. v. Stearns Lumber Co., 145 Ky. 255, 140 S.W. 148, 149, 36 L.R.A.,N.S., 566, insurer defended on policy provision that insurer "shall not be liable for loss caused directly or indirectly * * * by order of any civil authority." The insured building had been set fire by a United States deputy marshal to drive out of the house three men for whose arrest the deputy marshal had a warrant. On appeal, judgment for insured was affirmed. The court held that "the unlawful act of the marshal in setting fire to the house was the cause of the loss," and the insurer was liable.

In Rhode Island Ins. Co. of Providence, R. I. v. Fallis, 203 Ky. 112, 261 S.W. 892, 894, 37 A.L.R. 432, where sheriff fired gun into insured house to drive out man sheriff sought to arrest and thereby ignited fire which destroyed house, the insurer abandoned the defense that loss was caused by order of civil authority. The court held insurer liable as against contention that insured by his own wrongful act caused the loss, and said the provision excepting losses caused by invasion, riot, civil war, etc., and by order of any civil authority, was mani-

festly inapplicable to that case, and that the act of the sheriff "was clearly an unlawful exercise of authority on his part."

In Queen Ins. Co. of America v. Perkinson, 129 Va. 216, 105 S.E. 580, 581, where insured building was fired by order of mayor to drive out fugitive, the trial court instructed jury that the order of the mayor was an "order of any civil authority," but the appellate court left undecided "The very interesting question of whether the order of the mayor was the 'order of any civil authority.' "

■ The rules from the cited cases appear to be that the order is the cause of the loss and insurer is not liable when the loss is the unintended result of an act, done as directed, in execution of a lawful order made in good faith and within the apparent scope of the powers of the civil authority issuing the order, and in such case insured cannot question the necessity for such order under the circumstances of the particular case, Hawaii Land Co. v. Lion Fire Ins. Co., supra; Conner v. Manchester Assurance Co., supra; or, when the loss is the unintended result of the inadvertent or negligent doing of an act actually or apparently, reasonably necessary to execute a lawful order, Hocking v. British America Assur. Co., supra; Port Washington Nat. Bank & Trust Co. v. Hartford Fire Ins. Co., supra; Kwong Lee Yuen & Co. v. Alliance Assurance Co., supra. On the other hand, the order is not the cause of the loss and insurer is liable: when the act causing the loss is done by mistake and is not an act ordered to be done, Kwong Lee Yuen & Co. v. Alliance Assurance Co., supra; or when the act is not actually or apparently, reasonably necessary to execute the order, Kwong Lee Yuen & Co. v. Alliance Assurance Co., supra; or when the act is not one the civil authority is authorized by law to do or order to be done, Reed v. Newark Fire Ins. Co., supra; American Central Ins. Co. v. Stearns Lumber Co., supra; Rhode Island Ins. Co. of Provi-

dence, R. I. v. Fallis, supra; or when the act is done, not in execution of the order received, but to gratify the ill will of the actor. Kwong Lee Yuen & Co. v. Alliance Assurance Co., supra.

In the instant case there was no order of any sort requiring that the house be burned. There was no order expressly requiring the use of dynamite. The only order was to destroy the still "only so far as to prevent the use thereof, or any part thereof, for the purpose of distilling." If Snarr's act was either actually or apparently reasonably necessary to execute the order, then the order caused the fire, the loss was excepted from the coverage of the policy, and the insurer was not liable. If, however, Snarr's act was not actually or apparently reasonably necessary to execute the order, then the order was not the cause of the fire, the loss was not excepted from coverage, and the insurer was liable.

■ In deciding whether the affirmative charge with hypothesis in favor of defendant should have been given, the evidence must be considered in the light most favorable to plaintiff, and such reasonable inferences as could be drawn by the jury must be allowed. Vulcan Life & Accident Ins. Co. v. Standifer, 266 Ala. 246, 97 So.2d 568. The question here is: Does the evidence show without conflict that Snarr's act in exploding the dynamite was actually or apparently reasonably necessary to execute the order? If the evidence does show without conflict that his act was so necessary, then appellant was entitled to the requested affirmative charge. If, on the other hand, the evidence affords a reasonable inference that his act was neither actually nor apparently reasonably necessary to execute the order, then such charge was correctly refused.

■■ The burden of alleging and proving that the loss was excepted from the policy coverage was on the insurer. Belt Automobile Indemnity Ass'n v. Ensley Transfer & Supply Co., 211 Ala. 84, 99

So. 787. The proof is that the dynamite was exploded in the still by the treasury agent. The showing is that he would testify that he acted "in the course of his duty." We are of opinion that evidence that he used the dynamite supports an inference that he may not have been acting in the course of his duty.

"* * * The nature and power of dynamite as an explosive have been demonstrated by universal experience, and it is a matter of common knowledge that the use of dynamite as an explosive is intrinsically dangerous, and of this the courts will take judicial notice. (Citations omitted)" City of Chicago v. Murdock, 212 Ill. 9, 12, 72 N.E. 46, 47.

See also: Norwalk Gaslight Co. v. Borough of Norwalk, 63 Conn. 495, 527, 28 A. 32; Fitzsimons & Connell Co. v. Braun, 199 Ill. 390, 65 N.E. 249, 59 L.R.A. 421; Anderson v. Smith, 104 Minn. 40, 115 N.W. 743; Fazio v. Corey Bros. Construction Co., 43 Utah 120, 134 P. 747; Houston Transp. Co. v. Grimm, Tex.Civ.App., 168 S.W.2d 892.

In view of the commonly known nature of dynamite, the fact that Snarr used forty sticks of it appears to us sufficient to support an inference that he was intentionally doing an unlawful act, or that he was doing an act not expressly required by a lawful order and not actually or apparently reasonably necessary to execute a lawful order.

If Snarr had not used dynamite and had intentionally set fire to the house for the purpose of thereby destroying the still, it is clear that he would not have been doing an act required by a lawful order. If he had used dynamite, but had placed it outside the still and in or under the house so that house as well as still would necessarily have been damaged or destroyed, he would not have been doing a lawful act, although the still, as well as the house, would have been thereby destroyed. When he placed the dynamite in or "at and about" the still,

instead of outside it, he destroyed both house and still. We cannot say, as a matter of law, that placing the dynamite in the still instead of outside it foreclosed the jury from finding that his act was not actually or apparently reasonably necessary to be done in the execution of a lawful order. In short, the testimony as to what he did supports an inference which is in conflict with what the showing says he did.

Snarr may have acted in good faith believing that he was acting in the course of his duty, but if he was mistaken in this belief, the order would not be the cause of the fire. Kwong Lee Yuen & Co. v. Alliance Assurance Co., supra.

Because of the conflicting inference which the jury was free to find from Snarr's conduct, the court did not err in refusing the affirmative charge with hypothesis requested by appellant.

As to the value of the house, plaintiff testified that its reasonable market value was four or five thousand dollars prior to the fire. The evidence is undisputed that nothing of the house was left "when the fire quit burning."

We are of opinion that the verdict was not contrary to the great preponderance of the evidence and that the court did not err in overruling that ground of the motion for new trial.

Appellant's exception to the oral charge is as follows:

"We make this exception to the Court's charge: The Court in its charge used the words 'acting under civil authority'. The defense asserted by the defendant is based on lines 11, 12, 13, 17, 18 and 19, which reads 'by order of any civil authority.' The wording as used by the Court is not in keeping with the wording of the policy and the defense asserted thereunder in that the words 'acting under

civil authority' are not one and the same and do not have the same legal meaning as the words 'order of any civil authority.'

"It is the defense of the defendant that the particular officer on the case was the civil authority in this case acting pursuant to Title 26, Section 5623 of the United States Code and that the Court has misconstrued the defense asserted by the defendant under this plea of loss by order of any civil authority as set forth in the case of: Port Washington [Nat. Bank & Trust Co.] Vs. Hartford Fire [Ins. Co.], [253 App.Div. 760], 300 N.Y. Supplement 874, * * *."

Assignment of error 6(c) asserts that the court erred in charging the jury as follows:

"Then, as I have tried to explain to you, gentlemen, if this fire was caused by officers acting under civil authority and was done to prevent the use of that still and it was necessary for them to do what they did to prevent the use of that still from any more operation, and if it wasn't, then the plaintiff would be entitled to recover. If they did more than was necessary there, doing what they did to that still, and it caused this fire, then the plea would fail and the plaintiff would be entitled to recover."

In Black's Law Dictionary, Fourth Edition, page 1247, the following definition of "order" appears:

"A mandate, precept; a command or direction authoritatively given; a rule or regulation."

In all of the cited cases, except Port Washington Nat. Bank & Trust Co. v. Hartford Fire Ins. Co., supra, a directive was issued, orally or in writing, sometimes informally, by some official to the actor who actually set the fire or did the act which caused it. In Port Washington Nat. Bank & Trust Co. v. Hartford Fire Ins. Co., supra, the opinion shows no such directive. The cases, however, appear to make no distinction between the situation where a formal directive is issued and the situation where the official himself acts without benefit of such directive.

We perceive no reason why there should be any difference. The phrase, "order of any civil authority," implies an order by authority of law. Words, written or spoken by a public officer, directing another to do an act not authorized by law, would not make lawful the doing of that which is otherwise unlawful. Neither would the absence of such words make unlawful the doing of that which the law authorizes to be done.

■ Appellant's exception is without merit. The record does not disclose that any person spoke or wrote any words directing any other person to destroy the still or explode dynamite. It appears to us that if the federal agent was acting in compliance with the statute, under the rules we have considered, he was "acting by order of civil authority" and also "acting under civil authority." We see no difference between the two phrases in this case. Indeed, as to the proposition stated by the exception, the court's charge appears favorable to appellant. There was no directive or command issued by any authority except § 5623, Title 26 U.S.C.A.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and STAKELY, JJ., concur.