## Rhode Island Insurance Company of Providence, Rhode Island v. Fallis.

## British America Assurance Company v. Same.

(Decided May 9, 1924.)

### Appeals from Franklin Circuit Court.

1. Insurance—Clause Exempting from Losses Held Not Applicable where House Set Afire by Gunshots on Order of Sheriff.—Insurance clause exempting from losses caused by "invasion, insurrection, riot, civil war, or commotion, or military power or by order of any civil authority or theft, or by neglect of the insured," held not applicable where insured was sought by officers, and house was set afire by shots fired into it on order of sheriff.

2. Insurance—Fire Caused by Gunshot Not Result of Voluntary and Wrongful Act of Insured in Shooting Policemen.—Where insured shot policemen, and his house was surrounded, and after he had secretly left sheriff ordered deputies to fire into building, which set it afire, loss was not result of insured's own voluntary and

wrongful act, so as to relieve insurer from liability under fire policy.

3. Insurance—Burden on Insurer to Establish Defense.—Burden rested upon fire insurer to establish every essential element necessary to constitute defense that loss was proximate result of insured's voluntary and wrongful act.

4. Insurance—Firing Into House Held Unlawful Exercise of Authority.—Where insured shot a policeman and fled to home, and fired at several policemen therefrom, and secretly left house, an order several hours later by sheriff to fire into house was an unlawful exercise of authority, under Criminal Code of Practice, section 40, Ky. Stats., section 4583.

THOMAS B. McGREGOR for appellants.

L. W. MORRIS for appellee.

OPINION OF THE COURT BY JUDGE O'NEAL—Affirming.

Appellee, John R. Fallis, instituted two separate suits in the Franklin circuit court to recover for losses which he sustained and which he alleged were covered by insurance policies issued to him by the defendants in the said actions, the appellants in these two appeals. The petitions and the answers filed thereto were identical in character in each action and by agreement of parties they were consolidated and heard together, and as the same questions are involved upon this appeal, we will consider them together.

In the petitions appellee sought a judgment against the appellants on policies issued by them in which they insured him against loss by reason of the destruction by fire of his store and dwelling in the city of Frankfort. Appellants admitted that the policies were in force at the time the property insured was totally destroyed by fire, but by way of defense they pleaded affirmatively that the loss was of the character expressly excluded from coverage under that exception in the policies which provided that the companies "shall not be liable for any loss or damages caused directly or indirectly by invasion, insurrection, riot, civil war or commotion, or military power or by order of any civil authority or theft or by neglect of the insured to use all means to save and preserve the property at and after the fire." By amended answers the appellants interposed the further defense that the property was totally destroyed by the voluntary and wrongful acts of the insured, and that for that reason also they were not liable to him for the loss he sustained.

There is no material dispute as to the facts. The evidence shows that on the night of June 15, 1921, between eight and nine o'clock, the appellee shot two policemen in the city of Frankfort. He fled to his home—the property insured in the two policies sued on—and was there followed by a number of city police officers and a large concourse of onlookers. While the officers were standing across the street from appellee's house talking to his wife, he called to them in a threatening manner to come and get him, whereupon two of them started to cross the street in order to effect his arrest. As they approached the door of his house he fired upon them either two or three times and wounded both of them. This occurred about nine o'clock in the evening, and appellee says that immediately thereafter he left home through the rear door and did not return for some four or five days. This testimony is not only not contradicted by any witness, but it is strengthened by the fact that no one saw or heard of him from that time on. The sheriff of the county arrived upon the scene at about 11 p. m., accompanied by the governor and adjutant general of the state. He immediately deputized a number of citizens to act as a *posse*, and, having secured arms from the arsenal, these citizens and other deputies surrounded appellee's home and awaited his appearance. This was some two hours after appellee claims he had departed. Not a shot was fired either from the house or into it and no demonstration was made on either side for several hours, nor was any effort made to effect an entrance or otherwise force or persuade appellee to surrender or submit to arrest, and apparently no attempt was made to ascertain if he was still in the building. All of the lights in the house were burning when the sheriff arrived, and they continued to burn throughout the night. The sheriff and his deputies state that they in good faith believed that appellee was in the house all the time they were there, and that their belief was founded upon information they received from bystanders and upon the fact that they were informed appellee had fired from the house some two hours before their arrival. The premises were kept under constant surveillance until about 3:30 a. m., at which time the sheriff, after twice calling out to appellee to come out and surrender and receiving no response, ordered his deputies to fire into one of the upper rooms. The sheriff by common consent had assumed full authority and he states that he gave this order

upon the advice of both the governor and adjutant general. His purpose in firing was solely to frighten appellee and force his surrender; he did not order his deputies to fire for the purpose of protecting himself or others, and he had no intention of either burning the house or shooting appellee. Several shots were fired by the deputies, and immediately thereafter there appeared a flare in the building described by witnesses as having the appearance of being the explosion of a box of matches. No one claimed to know just what caused the fire which followed almost immediately and which resulted in the total destruction of appellee's store and dwelling, but a number of witnesses expressed the opinion that the fire was the result of the shooting. Appellee introduced the testimony of three witnesses who claimed to have notified various members of the *posse* some time before the fire that appellee was not in the house. We do not consider this material, however, in view of our conclusions and in view of the further fact that appellants did not claim or attempt to prove that appellee was actually in the building at any time between 9 p. m., when he fired upon the police officers, and 3:30 a. m., when his home caught fire and burned.

The court below, being of the opinion that these facts failed to constitute a valid defense to the policies, peremptorily instructed the jury to find a verdict for the appellee in each case, and entered judgments therein awarding him the full amounts sued for. Whether or not the court erred in granting the peremptory is the sole question involved upon these appeals.

Apparently, appellants abandoned the defense set up in their original answers, wherein it was charged that the loss sustained by appellee was expressly excluded from coverage by that clause of the policies which exempted the companies from losses caused by "invasion, insurrection, riot, civil war or commotion or a military power or by order of any civil authority or theft or by neglect of the insured to use all means to save and preserve the property at and after the fire." Manifestly, this clause is not applicable to the state of facts proven in this case. American Central Insurance Co. v. Stearns Lumber Co., 145 Ky. 255; Spring Garden Insurance Co. v. Imperial Tobacco Co., 132 Ky. 7. However, we find it unnecessary to discuss this defense at length since it was abandoned in the lower court and is not urged or argued upon these appeals. But it is earnestly insisted

that appellee was not entitled to a judgment because the
evidence shows the loss he sustained was the result of
his own voluntary and wrongful acts for which he could
not recover.   In support of this contention it is argued
that appellee had committed a public offense by shooting
the police officers and thereafter unlawfully resisting
arrest; that the sheriff was legally authorized to make
the arrest and to use such force as he had reasonable
grounds to believe necessary; and that under the exist-
ing circumstances he was justified in shooting into ap-
pellee's home; and that this was the proximate cause of
the fire which destroyed the property insured.   This
argument is plausible but not convincing.   That ap-
pellee's conduct was extremenly reprehensible is un-
doubtedly true; he had committed a public offense of the
most serious character and it was his duty to submit to
arrest.   This he did not do, but it does not follow that he
thereby forfeited his rights or is barred from recovering
under the policies issued to him by appellants.   There
is no provision or stipulation in the policies exempting
the companies from liability where the loss is the result
either of a violation of law or of misconduct on the part
of the insured.   The companies could have protected
themselves against such a contingency had they desired
to do so, but they failed to insert such a clause in their
policies, and they are, therefore, responsible under their
contracts for all losses by fire sustained by the insured
which are not expressly excluded from coverage by the
terms of the policy itself, save and except where the loss
is the proximate result of such voluntary and wrongful
acts on the part of the insured that it would be against
public policy to permit him to profit thereby.   The rule
is thus stated in 26 C. J. 347:

> "Except where the policy stipulates that the
> insurer shall not be liable for loss caused by the
> neglect of the insured to use all reasonable means
> to save and preserve the property when it is endang-
> ered by fire, mere negligence or carelessness on the
> part of the insured or of his servants, although
> directly causing or contributing to the loss, is one
> of the risks covered by the insurance and does
> not relieve the insurer from liability; and this rule
> applies even where the contract excepts losses origi-
> nating 'by design in the assured,' if the negligence
> does not amount to design.   However, even though
> there is no stipulation in the policy to that effect, if

the insured's acts of negligence or misconduct are such as to show a wilful and fraudulent purpose or design to destroy the property, he cannot recover on the policy. . . . "

We find substantially the same statement so far as applicable to the cases at bar in 14 R. C. L. 1223, where it is said:

"Fraudulent losses are necessarily excepted from a fire policy upon principles of general policy and morals; for no man can be permitted, in a court of justice, to allege his own turpitude as a ground of recovery in a suit. . . . "

These principles have been approved by this court in numerous decisions. Bindell v. Kenton County Assessment Insurance Co., 128 Ky. 389; North River Insurance Company v. Walker, 161 Ky. 373.

We have never been confronted with the exact situation the record in this case presents, nor has any other court of last resort so far as we have been able to discover. All the decisions and authorities we have examined, including those referred to above, involve cases in which the insured either intentionally set fire to the property insured or wrongfully permitted it to burn under such circumstances as clearly indicated a fraudulent intent on his part.    Under these conditions the courts have universally held that the insured was barred from recovery because of his voluntary and wrongful acts, and it is both right and proper that he should be. Nor do we think the doctrine should be limited strictly to cases of the foregoing character.   It applies with equal force to any loss sustained by an insured as the result of intentional and wrongful acts on his part that are either calculated to cause the loss or that might reasonably be expected to do so if, in fact, such wrongful acts smack of fraud and are the proximate cause of the loss.   But we have no such case here.   There is no pretense of fraud or intent on the part of the insured, nor are there any circumstances from which either can be inferred.

Under the pleadings the burden of proof rested upon appellants, and it was incumbent upon them to establish every essential element necessary to constitute a defense. This they wholly failed to do.   It is true the evidence showed beyond question that appellee, after having shot two police officers, fled to his home, the property insured in the policies, and there fired upon and wounded two

other officers who attempted to arrest him. He states that this occurred at about 9 p. m. and that immediately thereafter he left the house, and that statement is corroborated rather than contradicted by appellants' evidence; but, even if it be conceded that he remained upon the premises, there is not a scintilla of evidence that he offered any furthr resistance or made any hostile demonstration by word or deed, or otherwise provoked an attack upon himself; and in the absence of such evidence it cannot be said that he was charged with the duty of anticipating the consequences that followed. However gross his misconduct may have been, it was not the proximate cause of the wrongful burning of his house by the sheriff some six hours after he had been guilty of his misconduct.

Appellee was offering no resistance to the sheriff and his *posse* at the time, and they were not compelled to shoot either in self-defense or in order to effect his arrest; they fired solely for the purpose of scaring appellee and, if he were in the house, thus force him to come out and submit to arrest. There was no intention of shooting appellee or burning his house, nor had his misconduct made such action necessary or even apparently necessary; the sheriff simply desired, and he so states, to minimize the danger which he thought might later arise. This was clearly an unlawful exercise of authority on his part and in no sense the proximate result of appellee's misconduct, and he cannot be held responsible thereafor. Section 40, Criminal Code; section 4583, Kentucky Statutes; American Central Insurance Co. v. Stearns Lumber Co., 145 Ky. 255. We are, therefore, convinced that while appellee was guilty of the grossest sort of misconduct, it was not the proximate cause of the destruction of his premises; and that being true, the lower court properly sustained his motion for a directed verdict in each of these two cases. Wherefore the judgments are affirmed.