## Manhattan-Penn, Inc. v. Bucks Assoc.

Peter T. Parashes, for plaintiff.

William B. Koch, for defendant Bucks Associates and M. A. Kravitz Co.

Herbert Pressman, for defendant Kates.

Donald J. P. Sweeney, for defendant Wells Fargo.

BECKERT, J., July 14, 1983—This case has come before us by virtue of garnishment proceedings instituted by plaintiff-owner of a clothing store at Oxford Valley Mall, seeking recovery for losses which resulted from certain water damage which occurred when a uniform store situated immediately above plaintiff's store in the mall was destroyed by fire. That fire was the result of a July 30, 1974 arson by individual defendant Bruce Howard Kates, who was subsequently convicted of that crime. Plaintiff's garnishment is directed against proceeds of a certain insurance policy issued by Pennsylvania National Mutual Casualty Insurance Company in favor of the corporate owner of the business destroyed in the arson fire. The insurer opposes that garnishment, and after hearing and consideration of the parties' memoranda of law we make the following

## FINDINGS OF FACT

1. On December 12, 1975 Bruce Howard Kates, was convicted of arson in the Court of Common Pleas of Bucks County for a fire which occurred on July 30, 1974 at Uniforms For You, Oxford Valley Mall, Upper Level. The aforesaid conviction was

subsequently affirmed on January 5, 1978 by the Superior Court of Pennsylvania.

2. Pennsylvania National Mutual Casualty Insurance Company issued policy no. 515-015484 effective for the period March 25, 1974 through March 25, 1977 insuring Uniform Land of Oxford Valley, Inc., Oxford Valley Mall, Upper Level, which in fact was the same store as that burned by Bruce Howard Kates on July 30, 1974.

3. The underlying consolidated suits upon which the garnishment action is based are known as Manhattan-Penn, Inc., t/a Eugene Jacobs v. Bucks Associates, t/a Oxford Valley Mall and M. A. Kravitz Company, Inc., Docket no. 75-5693-02-2 and Manhattan-Penn, Inc., t/a Eugene Jacobs v. Wells Fargo Alarm Services, Docket no. 79-7406-12-2.

4. In the underlying suits, plaintiff alleged that defendants, Bucks Associates, t/a Oxford Valley Mall and M. A. Kravitz Company, Inc., caused harm to plaintiff by leaving construction holes in the floor of the Uniforms For You store, which holes allowed water from the sprinkler heads in that store, activated by the fire, to pour through into the Eugene Jacobs store located directly beneath on or about July 30, 1974.

5. Section C, paragraph (c) of II "Persons Insured" of the Pennsylvania National Mutual Casualty Insurance Company Policy no. 515-015484 provides as follows:

"If the named insured is designated in the Declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, member of the board of trustees, directors or governors or stockholder thereof while acting within the scope of his duties as such:"

6. The Pennsylvania National Mutual Casualty Insurance Company, policy no. 515-015484 provides, inter alia, as follows:

"This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto. (Lines 1 through 6 of the 165 line statutory preamble.)

"This Company, shall not be liable for loss by fire or other perils insured against in this policy caused, diectly or indirectly, by: . . . (i) neglect of the insured to use all reasonable means to save and preserve the property at and after a loss, . . . . (Lines 21 to 24 of the statutory 165 lines.)

"Conditions suspending or restricting insurance. Unless otherwise provided in writing added hereto, this Company shall not be liable for loss occurring (a) while the hazard is increased by any means within the control or knowledge of the insured; (Lines 28 to 32 of the statutory 165 lines.)

"The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . property damages to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental to the business of the named insured conducted at or from the insured premises . . . . (SMP Liability Insurance Form, Section II Liability Coverage, Coverage C — Bodily Injury and Property Damage Liability.)

" '[O]ccurrence' means an accident including continuous or repeated exposure to conditions, which results in bodily injury or property damage

neither expected nor intended from the standpoint of the insured; (Definitions—Section II.)" ·

7. The entity known as Uniform Land of Oxford Valley, Inc. was a corporation created for the purpose of operating a uniform store in the Oxford Valley Mall. Bruce Howard Kates held the office of vice president and was the sole shareholder of that corporation at the time of the events giving rise to this litigation.

8. Plaintiff obtained a judgment in the Court of Common Pleas of Bucks County in the consolidated suits known as Manhattan-Penn, Inc., t/a Eugene Jacobs v. Bucks Associates, t/a Oxford Valley Mall and M. A. Kravitz Company, Inc., and Bruce Howard Kates, Docket no. 75-5693-02-2 and Manhattan-Penn, Inc., t/a Eugene Jacobs v. Wells Fargo Alarm Services, Docket no. 79-7406-12-2 on September 28, 1981 in the amount of $134,281.36, plus interest for a total of $160,621.17. The judgment was entered against Bruce Howard Kates t/a Uniforms For You.

9. A release of Wells Fargo Alarm Services was executed on October 10, 1981. A release of Bucks Associates, t/a Oxford Valley Mall and M. A. Kravitz Company, Inc., was executed on October 14, 1981.

10. No evidence whatsoever was presented of record to indicate that defendant Bruce Howard Kates had any awareness of the holes in the concrete floor above the Eugene Jacobs shop or any reason to believe that water damage might be sustained below as a direct result of the fire which he intentionally set.

## DISCUSSION

In opposition to these garnishment proceedings defendant-insurer has raised two principal defenses. First, it is alleged that the releases executed between

plaintiff and the settling parties in the underlying litigation operated not only as a release of those parties, but also as a release of defendant Kates as well. Second, the insurer contends that all coverage which otherwise would have been applicable was voided by reason of Kates' intentional act in setting the fire which in turn activated the sprinklers which were the direct cause of the water damage.

It is our conclusion that the releases issued to defendants Bucks Associates, t/a Oxford Valley Mall and M. A. Kravitz Company, Inc., and Wells Fargo Alarm Services do not operate to release Bruce Howard Kates from liability to plaintiff. We base that conclusion upon the wording of section 8326 of the Uniform Contribution Among Joint Tortfeasors Act, 42 Pa.C.S. §8326:

"A release by the injured person of one joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides, but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release or in any amount or proportion by which the release provides that the total claim shall be reduced if greater than the consideration paid." If Kates and the other named defendants were in fact determined to be joint tortfeasors, the releases executed after the settlement with certain of the parties would not operate to release Kates since those releases did not so expressly provide. In addition, there is a further question as to whether or not the parties would have to be determined through formal judicial proceedings to have been joint tortfeasors, and such was not accomplished here before the settlement was entered into. See Lasprogata v. Qualls, 263 Pa. Super. 174, 397 A.2d 803 (1979).

A release of claims must be examined in a manner which limits its operation to matters which were

fairly within the contemplation of the party or parties who executed the release, at the time when it was given. Gateway Center Corporation v. Merriam, 290 Pa. Super. 419, 434 A.2d 823 (1981). From an examination of the two releases executed in the instant case it is apparent that there was no contemplation of anyone being released and discharged thereby with the exception of those defendants whose names were specifically typed onto those documents. In fact, the Bucks Associates and Kravitz release expressly deleted the wording which would have applied the release more broadly as to ". . . all other persons, firms and corporations who might be liable . . . . " The covering correspondence which accompanied that release made it abundantly clear that the right to pursue a claim against Kates' insurance carrier was being reserved.

We will not become embroiled in further discussion of this question or the related issue of whether the garnishee-insurer is entitled to a setoff for amounts paid in settlement by defendants other than Kates, since we feel that the controlling issue is the more difficult question of whether Kates' intentional act of setting the fire which precipitated plaintiff's loss furnishes the insurer with a full and complete defense to this garnishment claim. We find that it does.

In a garnishment proceeding, plaintiff can claim no rights which are greater than those of his debtor. In this instance, if Kates has no right to assert a claim against the garnishee, Pennsylvania National Mutual Casualty Insurance Company, then plaintiff's claim must likewise fail. Concerning the standing of plaintiff, we find that this case is very similar to the case of General Electric Credit Corporation v. Aetna Casualty and Surety Company, 437 Pa. 463,

263 A.2d 448 (1970), where our Supreme Court stated, at page 473:

"The fire in this case was the result of arson by the owners . . . of the named insured . . . . The insurance companies are therefore not liable to the insured: Mineo v. The Eureka Security Fire & Marine Insurance Co., 182 Pa. Super. 75, 125 A.2d 612 (1956); Showalter v. Ins. Co., 3 Pa. Super. 448 (1897). In the absence of a stipulation in the policy giving to a creditor, who is made a beneficiary-payee in the policy, higher rights than the insured owner, the creditor's right to proceeds under the policy is derivative and limited to the extent of the insured's right of recovery: First National Bank v. Newark Fire Insurance Co., 118 Pa. Super. 582, 180 Atl. 163 (1935)."

Wilkosz v. Employer's Liability Assurance Corp., 13 D.&C.2d 746 (1957), likewise held that the rights of one who institutes an action against a tortfeasor's insurance carrier can rise no higher than those of the tortfeasor himself. It is incumbent upon plaintiff in such a case to show that all of the terms and conditions precedent to liability under the applicable insurance policy have been observed.

We must examine whether the willful misconduct of Kates himself stands as an absolute defense which would preclude any liability for payment by the insurer. The fact that an insured should not be allowed to benefit from such an act appears to be clearly entrenched in the law of Pennsylvania, as expressed in the following excerpt from Matyuf v. Phoenix Insurance Co., 27 D.&C.2d 351 (1933), at page 354:

". . . independent of the presence in or absence from the policy of any particular words expressive of an explicit intent upon this point, it is generally agreed by the authorities that when the assured vol-

untarily and intentionally burns a building insured against fire, no recovery can be had upon the policy, this being the rule, even though there be no stipulation in the policy to that effect: 26 C.J. 347, §443. 'Fraudulent losses are necessarily excepted from a fire policy upon principles of general policy and morals; for no man can be permitted, in a court of justice, to allege his own turpitude as a ground of recovery in a suit': 14 R.C.L. 1223; Rhode Island Ins. Co. v. Fallis, 203 Ky. 112, 261 S.W. 892, 37 A.L.R. 432. 'Nor was it necessary to stipulate that the company should not be liable for the willful destruction of the building by the insured. The parties are presumed to have contracted with reference to the principles of natural justice and well settled law, which forbid a man to avail himself of his own turpitude in a suit, or to contract for indemnity against his own fraud. The contract of fire insurance is a contract of indemnity against loss by fire, and the direct burning of the building by the wilful act of the insured is not one of the risks within the contemplation of the parties to the contract:' Rice P.J., in Showalter v. Insurance Co., 3 Pa. Super. 448, 449-50 (1896). Not only is such wilful burning by the assured, while sane, a fraud upon the insurance company, but it is an indictable crime: Act of April 25, 1929, P.L. 767, (and see Commonwealth v. Lombardo, 12 Wash. Co. 160, 162;) and the maxim Ex turpi causa non oritur actio applies. 'It cannot be that one of the risks covered by a contract of insurance is the crime of the insured. There is an implied obligation on his part to do nothing to wrongfully accelerate the maturity of the policy. Public policy forbids the insertion in a contract of a condition which would tend to induce crime and as it forbids the introducing of such a stipulation it also forbids the enforcement of a contract under circumstances which

cannot be lawfully stipulated for': Burt v. Union Cent. L. Ins. Co., 187 U.S. 362; Smith v. Germania Fire Ins. Co., 102 Ore: 569, 202 Pac. 1088."

Notwithstanding what appears to be the clear state of the law prohibiting an arsonist from himself reaping a financial harvest from his wrongdoing, plaintiff here suggests that it still should be entitled to receive payment of insurance proceeds because the casualty loss which actually occurred was as the result of the secondary water damage, rather than the incendiary fire itself. Here again, we find guidance in the Matyuf holding, which denied recovery to an arsonist's wife, who was making a claim under an insurance policy issued jointly to husband and wife on property which they owned as tenants by entireties. The court there acknowledged the truth of the wife's assertion that her husband had no right or authority to destroy her estate and interest in the property and that his burning of the building in a way which denied her the benefit of recovery of insurance operated as an unlawful wrong against her, and commented that, "We do not believe that she can be permitted to make a burning, fraudulently done by her husband, the basis of a recovery in this action — can found her action upon, and recover the fruits of, a fraud committed against defendant by her co-plaintiff." Matyuf at page 358.

We certainly have no difficulty accepting within plaintiff's assertion that the fire set by Kates was the proximate cause of the activation of the sprinklers which, in turn, gave rise to the water damage to the shop situated immediately below. Nonetheless, we do not think that the right to recovery here hinges upon the issue of causation, but rather upon the policy considerations which are recited in Matyuf. Just as the co-owner spouse was there denied the benefit of insurance because the effect of allowing the re-

covery would have tended to encourage crime, we likewise must conclude here that as a matter of policy, since Kates himself would have been precluded from receipt of insurance benefits due to his intentional misconduct, the creditor-garnishor who stands in his shoes, even though an innocent and injured party, is without recourse against the insurer. Plaintiff has focused considerable attention upon the argument that Kates did not foresee, when he intentionally set the fire, that water damage would result to the store below. Even if the truth of that contention is conceded, we do not believe that the outcome of this case is varied thereby. Plaintiff would have us direct our principal attention to the policy definition of an "occurrence" (see the complete definition of that term as it appears earlier herein as part of our Findings of Fact). However, following that focus, even if the resultant property damage attributable to the water was "neither expected nor intended" by Kates, the insurer is still entitled to the benefit of the policy restriction which provides that the company is not liable for loss occurring "while the hazard is increased by any means within the control or knowledge of the insured." We cannot escape the reality that all of the circumstances giving rise to this complex litigation related back to the knowing and intentional criminal misconduct of Kates, and we believe that singular fact overshadows áll other considerations and proposed policy interpretations.

We have carefully considered the cases cited by plaintiff, and we find them to be distinguishable. The leading case of Eisenman v. Hornberger, 438 Pa. 46, 264 A.2d 673 (1970), allowed recovery in an attachment execution proceeding against an insurer under a policy of homeowner's insurance, which policy contained an exclusion as to property damage

"caused intentionally by or at the direction of the insured." There, the fire loss came about as a result of unlawful entry into a private home by the minor insured and another person. They lit matches in order to find their way around the premises, instead of turning on the electric lights (which they feared would result in their detection). When the matches were expended, they were dropped. One match head, however, apparently lodged in the upholstery of some furniture and smoldered for hours, unknown to the felons who had long since departed, after which a fire erupted which consumed the house and its contents. In reviewing the policy language, our Supreme Court concluded that the exclusion of damage intentionally caused by an insured did not encompass damage which was the result of an intentional act, the ultimate consequence of which were unforeseen by the actor. The setting of Kates' fire, quite to the contrary, was by his express design, with its objective being the resultant destructive blaze. As stated at page 49 of the Eisenman opinion, an insurer may validly disclaim liability, upon a showing that the insured intended by his act to produce the damage which in fact occurred [citing 2A.L.R. 2d 1238 (1965)].

Likewise, we cannot follow, as plaintiff would have us do, the leading of Mohn v. American Casualty Co., 458 Pa. 576, 326 A.2d 346 (1974). Appellant there sought recovery on two medical insurance policies for expenses incurred due to his son's hospitalization due to injuries which ultimately proved fatal. The cause of those injuries was a police officer's bullet directed at the boy as he was fleeing from the scene of a burglary he had been attempting to commit. Under the terms of those policies, a claim had to be supported by proof of accidental bodily injury. The appellate court chose to

treat the shooting as accidental, since it certainly was not a result which the boy had perceived would come about when he engaged in his admittedly criminal activity. However, the word "accidental" has no place in the factual setting before us in the instant case, for as we have said before the insured contemplated full well that his act of combustion would be the direct cause of tremendous property damage. The degree of remoteness which allowed the courts to compensate the injured parties in those other cases is not to be found here.

Both Eisenman and Mohn were rejected by Judge Raup of Lycoming County in his well-written opinion in Kitzmiller v. Harleysville Mutual Insurance Company, 14 D.&C.3d 553 (1979). In dealing with a policy definition of "occurrence" virtually identical to that presently before us, Judge Raup held that an assault and battery for which the insured was convicted and was also found liable for civil damages did not amount to an occurrence for which he was entitled to the benefit of payment under his insurance coverage, since the result of his actions was expected and intended from his standpoint. In discussion at page 557 of that opinion the court stated that the policy coverage would apply ". . . if and only if the insured acts without any intent or any expectation of causing any injury, however slight. And conversely, such exclusion is applicable if the insured acts with the intent or expectation that bodily injury will result even though the bodily injury that does result is different either in character or magnitude from the injury that was intended. (Cases cited.)" We believe the same maxim is applicable to property damage, as well as to personal injuries. Here, a harm was intended by Kates, and that harm resulted, thereby negating insurance coverage, even though a conse-

quential loss was suffered by an innocent third party.

## CONCLUSIONS OF LAW

1. The Pennsylvania National Mutual Casualty Insurance Company has met its burden of proof by establishing that Bruce Howard Kates knowingly and intentionally caused the fire which resulted in plaintiff's loss, and accordingly the policy of insurance issued to the Uniform Land of Oxford Valley, Inc. did not provide coverage for loss resulting from that intentional act.

2. Plaintiff, as creditor-garnishor, is entitled to no greater right of recovery under the applicable insurance policy than could be obtained by the insured tortfeasor, nor is plaintiff entitled to recover as a third party beneficiary with a direct right of action.

3. Releases executed by plaintiff in favor of defendants Kravitz and Wells Fargo at the conclusion of earlier civil litigation do not operate as a bar to this action.

## ORDER

And now, this July 14, 1983, judgment is hereby entered in favor of garnishee Pennsylvania National Mutual Casualty Insurance Company and against plaintiff on its attachment claim.